IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LATUNIUA POHAHAU,<br><br>Defendant. | CR. NO. 13-00877 DKW<br>CR. NO. 15-00299 JMS<br><br>ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE (CR. NO. 13-00877 DKW, ECF NO. 274 AND CR. NO. 15-00299 JMS, ECF NO. 111) |

## ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE (CR. NO. 13-00877 DKW, ECF NO. 274 AND CR. NO. 15-00299 JMS, ECF NO. 111)

## I.  INTRODUCTION

Defendant Latuniua Pohahau ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Lompoc, California based on a pre-existing medical condition (obesity) and the COVID-19 pandemic. Defendant is presently serving a sentence at FCI Lompoc relating to two separate criminal matters—Cr. No. 13-00877 DKW and Cr. No. 15-00299 JMS—and he has moved for release from custody in both cases.[1]  The court decides these

---

[1] Because these two cases were assigned to different judges, on July 23, 2020 the court entered an order pursuant to Local Rule 40.2 assigning the Motion for Compassionate Release in 13-00877 DKW to the undersigned.  Thus, this order resolves the Motions for Compassionate Release filed in both Cr. No. 13-00877 DKW and Cr. No. 15-00299 JMS.

motions without a hearing under Local Rule 7.1(c).  Based on the following, the motions are DENIED.

## II.  <u>BACKGROUND</u>

Defendant is a 34 year-old inmate incarcerated at FCI Lompoc, and is scheduled for release from custody on March 1, 2030.  *See* https://www. bop.gov/inmateloc/ (last visited August 7, 2020).  As stated above, he is in custody based on judgments entered in two separate cases.

In Cr. No. 13-00877 DKW, Defendant pled guilty on September 5, 2015 to Count 1 of a Superseding Indictment charging him with conspiracy to distribute fifty grams or more of methamphetamine.  Cr. No. 13-00877 DKW, ECF No. 208.  On January 5, 2016, Defendant was sentenced to a term of 210 months imprisonment, and five years of supervised release.  *Id*. at ECF No. 237.

In Cr. No. 15-00299 JMS, Defendant pled guilty on September 2, 2015 to Count 3 of an Indictment charging him with possession with intent to distribute fifty grams or more of methamphetamine.  Cr. No. 15-00299 JMS, ECF No. 40.  On January 5, 2016, Defendant was sentenced to a term of 120 months imprisonment, and five years of supervised release, with both terms to run

concurrent to the sentence imposed in Cr. No. 13-00877 DKW.  *Id*. at ECF No. 68.[2]

Defendant submitted requests for compassionate release to FCI Lompoc's Warden on April 20, 2020 and June 6, 2020.  *See* Cr. No. 13-00877 DKW, ECF No. 274 at PageID #1513; Cr. No. 15-00299 JMS, ECF No. 111 at PageID #570.  No response was received.  On July 21, 2020, Defendant, represented by counsel, filed the instant motions for compassionate release, seeking a sentence reduction to time served, coupled with a period of home confinement as a condition of supervised release.  Cr. No. 13-00877 DKW, ECF No. 274 at PageID #1524; Cr. No. 15-00299 JMS, ECF No. 111 at PageID #581.  On August 4, 2020, the Government filed its Response to both motions.  Cr. No. 13-00877 DKW, ECF No. 281; Cr. No. 15-00299 JMS, ECF No. 117.  And on August 6, 2020, Defendant filed a Reply.  Cr. No. 13-00877 DKW, ECF No. 282; Cr. No. 15-00299 JMS, ECF No. 118.

---

[2] In Cr. No. 13-00877 DKW, Defendant's total offense level 35, Criminal History Category III, resulted in an advisory United States Sentencing Guideline range of 210 to 262 months incarceration.  Judge Watson sentenced Defendant to the bottom of this range, 210 months.  In Cr. No. 15-00299 JMS, Defendant's total offense level 33, Criminal History Category III, resulted in an advisory United States Sentencing Guideline range of 168 to 210 months incarceration.  Based on a Government-sponsored motion for downward departure, Defendant was sentenced to 120 months incarceration, to be served concurrently with the 210-month sentence in Cr. No. 13-00877 DKW.

# III. <u>DISCUSSION</u>

## A.    Legal Standard

Defendant moves for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018,[3] which provides as

relevant:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the
> term of imprisonment . . . after considering the factors set
> forth in [18 U.S.C.] section 3553(a) to the extent that
> they are applicable, if it finds that—
>
>         (i) extraordinary and compelling reasons warrant
> such a reduction;
> . . . .
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Thus, the court may reduce Defendant's sentence if:  1) Defendant has

exhausted the required administrative remedies; 2) Defendant has shown that

"extraordinary and compelling reasons" warrant the reduction; and 3) the reduction

is consistent with applicable Sentencing Commission's policy statements.  Here,

---

[3] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

the Government concedes the first prong—Defendant has exhausted his administrative remedies.  *See* Cr. No. 15-00299 JMS, ECF No. 117 at PageID #674-75.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides as relevant to Defendant that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline §1B1.13 provides three specific examples of extraordinary and compelling reasons for compassionate release—the defendant's terminal medical condition, deterioration of health due to advanced age, and extenuating family circumstances—along with a fourth, catch-all provision granting discretion to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist.  *See* Guideline § 1B1.13 n.1(A)-(D). In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when

ruling on motions for compassionate release." *United States v. Hernandez*, 2020 WL 3453839, at \*4 (D. Haw. June 24, 2020). The court incorporates that analysis here.

## B.    Extraordinary and Compelling Reasons

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bolden*, 2020 WL 4286820, at \*3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*, 2020 WL 4284128, at \*4 (D. Or. July 27, 2020). Here, Defendant contends that he should be released from custody because:  1) he is severely obese, with a BMI in excess of 40%; 2) he is at great risk given the historical numbers of COVID-19 at FCI Lompoc, and COVID-19 "is still raging through the facility;" and 3) he previously contracted COVID-19 (and has since recovered) while at FCI Lompoc. The court addresses each of these three arguments.

As to his first contention, the court agrees that Defendant has an underlying medical condition that places him at an increased risk for severe illness from COVID-19. According to the Centers for Disease Control and Prevention ("CDC"), individuals with "[o]besity (body mass index [BMI] 30 or higher)" fall into this high risk category. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited

August 7, 2020).  In short, it is beyond question that Defendant's pre-existing

medical condition places him at an increased risk.

Second, although FCI Lompoc[4] certainly was a COVID-19 "hot spot"

several months ago, the same is not true at the present time.  It is true that out of a

total of 1062 inmates tested at FCI Lompoc, 833 have tested positive for COVID-

19.  *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited

August 7, 2020).  But the claim that COVID-19 is "still raging through the facility"

is simply not supported by evidence—BOP currently reports "confirmed active

cases" are limited to 1 inmate and 1 staff member at FCI Lompoc.  *Id.*  Thus, FCI

Lompoc simply does not pose the threat it did several months ago.  And a review

of the July 2020 Department of Justice Office of Inspector General Report

provided by Defendant, Cr. No. 13-00877 DKW, ECF No. 282-2, although

documenting conditions at FCI Lompoc, does not contradict that conclusion (that it

does not pose the same threat it did several months ago).

Third, that Defendant previously contracted COVID-19 and has since

recovered counsels, albeit slightly, against a finding of extraordinary or compelling

reasons to warrant granting the motion for compassionate release.  Little is still

---

[4] FCI Lompoc presently houses 1,060 inmates.  *See* bop.gov/locations/ institutions/trm/ (last visited August 7, 2020).

known about the possibility of COVID-19 re-infection.  As stated by the

University of Maryland Medical System:

> There are still many unknowns when it comes to
> coronavirus immunity.  At this time, there is currently no
> way to know if novel coronavirus (SARS-CoV-2)
> induces immunity and how long any immunity could last.
>
> Other types of coronaviruses, such as MERS, do induce
> immunity, often for several years.  Many hope that
> SARS-CoV-2 will behave similarly.
>
> Unfortunately, the data is not cut-and-dry.  Most studies
> of immunity to coronaviruses, including SARS-CoV-2,
> focus on people who had severe disease and were
> hospitalized for their condition.  There is significantly
> less data on the immune response in people who had mild
> symptoms or were asymptomatic.
>
> On the other hand, scientists have not been able to
> confirm any cases of reinfection after novel coronavirus
> recovery.  Some anecdotal evidence has emerged in
> multiple countries.  However, it's possible that these
> patients falsely tested negative for the virus after their
> symptoms subsided and continued to harbor the virus.
>
> All of these unknowns are why the Centers for Disease
> Control and Prevention and the World Health
> Organization currently state that there is no evidence to
> suggest novel coronavirus infection imparts immunity.
> More research needs to be done.

https://www.umms.org/coronavirus/what-to-know/diagnosis-symptoms/immunity

(last visited August 7, 2020).  The CDC has made a similar statement:

> The immune response, including duration of immunity,
> to SARS-CoV-2 infection is not yet understood.  Patients
> infected with other betacoronaviruses (MERS-CoV,
> HCoV-OC43), the genus to which SARS-CoV-2 belongs,
> are unlikely to be re-infected shortly (e.g., 3 months or
> more) after they recover.  However, more information is
> needed to know whether similar immune protection will
> be observed for patients with COVID-19.

*See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last visited August

7, 2020).  Some courts have concluded that the dangers associated with COVID-19

are not a ground for relief for someone who had the disease and recovered.  *See*

*e.g.*, *United States v. Molley*, 2020 WL 3498482, at *2 (W.D. Wash. June 29,

2020); *United States v. Malecki*, No. 17-CR-18S, 2020 WL 4013050, at *5

(W.D.N.Y. July 16, 2020); *United States v. Zubkov*, 2020 WL 2520696, at *3

(S.D.N.Y. May 18, 2020); *United States v. Hennessey*, 2020 WL 4209020, at *1

(D. Minn. July 22, 2020).  Others have concluded an inmate recovered from

COVID-19 may still be able to demonstrate extraordinary circumstances justifying

release from custody.  *See United States v. Yellin*, 2020 WL 3488738, at *3 (S.D.

Cal. June 26, 2020); *United States v. Sholler*, ___ F. Supp. 3d ___, 2020 WL

2512416, at *5 (N.D. Cal. May 15, 2020).

   The court finds that based on the existing evidence, Defendant has

failed to demonstrate that extraordinary and compelling reasons warrant

compassionate release.  Although Defendant's severe obesity[5] places him at a higher risk for complications from COVID-19, he has no other medical conditions that place him at an elevated risk.[6]  Further, Defendant is 34 years old, and the number of COVID-19 cases at FCI Lompoc has dropped dramatically over the past few months.   In short, although Defendant has demonstrated that his obesity places him at a higher risk if he contracts COVID-19, he has failed to show that at the present time he is at risk of contracting the disease.

And to the extent that Defendant makes a more generalized argument regarding the risk of contracting COVID-19 in a BOP facility, the court disagrees.

_____

[5]  Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release.  *See e.g.,United States v. Lavatai*, 2020 WL 4275258 (D. Haw. July 24, 2020); *United States v. Wilfred*, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020); *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020); *United States v. Takewell*, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020); *United States v. Wax*, 2020 WL 3468219, at *2-3 (D.N.J. June 25, 2020).

[6]  The United States oddly states that Defendant's obesity "qualifies as an 'extraordinary and compelling reason' which entitles the Defendant to apply for compassionate release."  *See* Cr. No. 15-00299 JMS, ECF No. 117 at PageID #676.  Of course, any defendant serving a sentence is entitled to "apply" for compassionate release.  And to the extent the United States suggests that obesity standing alone qualifies as a compelling and extraordinary reasons warranting release, the court disagrees.  Obesity is certainly an important factor to consider in determining whether extraordinary and compelling reasons warrant release, but there are other important considerations as well.  One of those considerations is the risk that a particular defendant will in fact contract COVID-19 at his or her BOP facility.  *See, e.g., United States v. Miller*, 2020 WL 4547809, at *4 (E.D. Va. Aug. 6, 2020) (finding that a medical condition warrants release where a defendant shows "both a particularized susceptibility and a particularized risk of contracting the coronavirus."); *United States v. Quinones*, 2020 WL 4529365, at *5 (W.D.N.Y. Aug. 6, 2020).

*See, e.g.*, *United States v. Drummondo-Farias*, ___ F. Supp. 3d ___, 2020 WL 2616119, at *5 (D. Haw. May 19, 2020) ("Additionally, '[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]'") (quoting *United State v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

## C.     Section 3553(a) Factors

Even if Defendant had demonstrated the required extraordinary and compelling reasons exist to justify compassionate release, the court would deny the motion based on a consideration of the § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; and 2) the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).  And under the

11

parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

Defendant was a significant, large-scale distributor of methamphetamine in the State of Hawaii. On August 15, 2013, Defendant distributed of over 4.5 kilograms of methamphetamine to a law enforcement confidential source ("CS"). Presentence Investigation Report ("PSR") in Cr. No. 13-00877 DKW, ECF No. 231 at PageID #1109. Ten days later, Defendant "solicited the assistance of the CS in the distribution of approximately 40 pounds of methamphetamine that [Defendant] was expecting to receive within the week." *Id*. Defendant was then arrested on September 4, 2013, and found to be in possession of an additional 4.4 kilograms of methamphetamine. *Id*. at PageID #1109-10. Although Defendant was arrested on that day, he was released from custody under the court's supervision on September 16, 2013. *Id*. at PageID #1107.

While on pretrial release in Cr. No. 13-00877 DKW, Defendant was arrested for new criminal conduct, leading to the Indictment in Cr. No. 15-00299 JMS. Specifically, on April 16, 2015, law enforcement officers conducted a controlled delivery of a parcel previously determined (through the execution of a search warrant) to contain 2.9 kilograms of methamphetamine. Defendant, along

with others, were arrested after taking possession of the controlled delivery parcel.

In a post-arrest statement, Defendant told investigators that he had arranged to

receive seven pounds of methamphetamine in exchange for $40,500, and that the

parcel contained at least a portion of that methamphetamine.  PSR in Cr. No. 15-

00299 JMS, ECF No. 58 at PageID #171-72.  These facts demonstrate that

Defendant has been a large-scale methamphetamine dealer, and that he was not

deterred—not in the least—from continuing to deal methamphetamine after his

initial arrest.  Further, Defendant still has a significant portion of his sentence to

serve—he has been incarcerated since his arrest in April 2015, and is not scheduled

for release from custody until March 1, 2030.  *See* https://www.bop.gov/inmateloc/

(last visited August 7, 2020).  Thus, he has served approximately 65 months, and

has almost 10 years left to serve.[7]  Reducing Defendant's sentence to time served,

given the nature of his offenses, would severely undermine the goals of sentencing

set forth in § 3553(a)(2).  And this conclusion would not change when considering

Defendant's post-offense conduct.  Although his educational efforts while in prison

---

[7]  When evaluating the § 3553(a) factors, many district courts have considered the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See, e.g.*, *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, ___ F. Supp. 3d ___, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

are certainly commendable, they do not justify compassionate release when considered along with the other § 3553(a) factors.

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he did, the court would deny the motion based on the relevant § 3553(a) factors.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motions for compassionate release, ECF No. 274 (Cr. No. 13-00877 DKW) and ECF No. 111 (Cr. No. 15-00299 JMS), are DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 7, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Pohahau*, Cr. No. 13-00877 DKW and Cr. No. 15-00877 JMS, Order Denying Defendant's Motions for Compassionate Release (Cr. No. 13-00877 at ECF No. 274 and Cr. No. 15-00299 at ECF No. 111)